Our next case this morning is St. Joan Antida High School v. Milwaukee Public School District. May it please the Court, my name is Anthony Lococo and I'm here on behalf of St. Joan Antida. Milwaukee Public Schools provides busing to its own students on more generous terms than it applies to the students at St. Joan Antida, a private school. It may be that ordinarily public school districts have no duty at all to transport private school students. But Wisconsin has established a transportation benefit program that is generally available to public and private school students alike. This means that if a school district like MPS wishes to draw distinctions between groups of public and private school students, granting transportation benefits to one group and denying it to another, it must provide a sufficient rationale for those distinctions under the Equal Protection Clause. MPS is unable to do so in this case. MPS argues that its Within One Mile of a Bus Stop rule serves two purposes, reduction of costs and fulfillment of its educational mandate. Neither of these purposes withstand scrutiny. As an initial matter, however, each of the reasons MPS offers in support of its policy must be rejected because they conflict with the state law requirement that if MPS elects to provide transportation, there should be reasonable uniformity in the transportation furnished to pupils, whether they attend public or private school. Before we get into the merits, we have to decide what level of scrutiny applies. You're advocating for strict scrutiny here. But there has to be a direct and substantial interference with a fundamental right. And you've argued that a parent's right to direct their children's education is the fundamental right here. But what is the direct and substantial interference with that right that you've alleged? MPS has unilaterally decided that whether these students receive busing depends on whether their parents choose a public or private school for their children. This is about the safety of students, the welfare of students. That is as direct and substantial an interference with the right to direct the education of the children as is possible, short of actually making it illegal to go to private school. But what's the direct and substantial interference here? I understand what you're saying, the right is. But it looks like all but one of these students actually ended up going to SJA and got busing because SJA paid for it. That's right. So there wasn't any interference with their actually going to this school. Well, we don't say that because somebody could pay a poll tax, for example, there's not an interference with their right to vote. It's true that St. Joan Antietam offered to pay for transportation for these years, but there's no guarantee that it's going to continue to do so into the future. And it's using money that it receives in tuition and uses for the educational benefit of its students. So it's a harm in those two separate ways. So you're saying there's a potential for harm in the future that they may not pay for the busing? Isn't that too speculative to rise to strict scrutiny? Again, just because SJA offered, SJA certainly had no duty to transport the students. So the parents were entitled to transportation benefits under state law, and NPS stepped in and said, well, if you choose private school for your students, you're not going to be entitled to those. That's an obstacle to their enjoyment of the generally available benefits. Counsel, let's assume that we think rational basis applies here. Why wouldn't it be rational for NPS to conclude that it was going to offer, say, some sort of incentive or compensation for students who had to attend a school that was not their area-designated school? That may well be rational as a purpose, but in practice, that's not at all how NPS's policy is operating. As we set forth every year, they're transporting hundreds and hundreds of schools who choose to go to these citywide schools because they offer special programs. Many of these schools have eligibility requirements. You have to apply to the school to get in. This isn't a case where NPS is saying, look, this is a benefit we're restricting to students who had no choice in the matter. Or it's incentivizing. It's saying, you know, to fulfill our mission of providing education, appropriate education to our students, we're going to incentivize gifted and talented students to attend this magnet school or musically talented students to attend this school. Why isn't it rational to incentivize attendance like that? It is a rational purpose, Your Honor, but as the district court described it, that's true that it does create those incentives, but also irrelevant because there's special programming available at these private schools as well, and state law has made all students, public and private. So you might have a state law claim, but for an equal protection claim, you have to show that it's irrational. What I'm saying is state law has made them similarly situated. It said, NPS, private schools are your responsibility just as much as public schools are. So again, it might violate state law, but I'm just having trouble seeing why it would violate the Constitution. Well, I think that's the lesson that we gain from cases like Allegheny, Pittsburgh, and Armour of the city of Indianapolis, which is that otherwise legitimate purposes may become invalid if they conflict with an overriding state mandate. So NPS can't offer up as a purpose, well, we want to incentivize our students if there's an overriding state law that says, no, we don't care about that. What we care about is equality in this state, a reasonable uniformity in this state. But hasn't the Supreme Court said that Allegheny is very limited and applies when the state purpose is crystal clear? And the state itself here has said that reasonable uniformity is ambiguous. Absolutely, Your Honor. The city of Indianapolis states that it requires a clear and dramatic state violation. We think that's present here. There's Wisconsin case laws, such as St. John Vianney, which describes how reasonable uniformity applies to distance requirements. And while it is a rare case, it's also rare that a public school district is going to refuse to comply with what we think is a clear state law. Well, this isn't any uniformity if the claim is analyzed correctly. So it's not a distinction being drawn between three-quarters of a mile and a mile. You don't get this benefit at all if you go to private school. So it's not even close to uniform treatment. That's correct, Your Honor. I think there could be closer cases where the modifier reasonable comes into play, but here MPS is providing transportation to one group and denying it to another. That's not uniformity. MPS justifies it's within one mile of a bus stop rule with reference to cost, but cases of the Supreme Court and of this circuit teach that cost alone is not enough to justify arbitrary distinctions between similarly situated groups of individuals. The cost has to be unique in some way. If it were otherwise, the government could justify all kinds of discriminatory programs on the basis that the cost less would exclude a disfavored group. Counsel, can I ask a question just to clarify my understanding of the record? It is the case, right, that MPS does not provide busing to designated attendance area schools if the student lives within a mile of a bus stop? No, that's not correct, Your Honor. For attendance area schools, there's a two-mile, but there's not a bus stop requirement. Okay, so it was my understanding that SJA was being treated differently than citywide specialty schools. That's correct. But not differently than other designated attendance areas. I think I misunderstood your question. Yes, that's right. For citywide schools, all that is required is that students reside more than two miles from the school. So SJA's claim is that it should not be compared with other designated attendance area public schools that ought to be compared with other citywide schools. That's correct, Your Honor. And are there other public schools within Milwaukee where students, because they're designated attendance area schools, are in the same boat as students who attend SJA, that they don't get busing? I'm not sure if the record reflects that. Yes, there are. That is correct. Okay. But we can contend that SJA is more like the citywide schools because both provide eligibility for transportation to students living throughout the city of Milwaukee. They're not like attendance area schools where there is a discrete area smaller than the city of Milwaukee within which students can live to qualify for transportation. I'd like to speak briefly about receiving Charter I since that was the main justification for the district court's decision. That case did not involve the reasonable uniformity requirement or private school students at all. This court acknowledged and made clear that charter school students are public school students. And if this court decides the case using the principle from Allegheny County, Racine Charter I is therefore easily distinguishable on that ground alone. Racine Charter I also talked about how these independent charter schools are really more akin to their own school districts. That's correct, Your Honor. Rather than a school within a school district. That's correct, Your Honor. I think the analogy the court used is what we're being asked here is whether Racine is being asked to transport students from Kenosha School District rather than that's not what we have here. Here we have students living within Milwaukee Public School District. Additionally, the cost is... If we didn't have the reasonable uniformity requirement here, would you concede that the distinction is rational in light of the savings? No, Your Honor, because even so, even without the reasonable uniformity requirement, state law makes clear that it's a generally available benefit. And NPS is providing transportation to both public and private school students. So that being the case, it still has to justify the distinctions that it's drawing. And the cases that we've cited on cost would apply here. That there must be some unique cost, not just an additional dollar. And with the leave of the court, I'd like to reserve the rest of my time for rebuttal. That's fine. Thank you, Your Honor. May it please the court. The first step, obviously, is determining the standard of review. And there is no strict scrutiny that should apply to this case. It's pretty clear that there's no discrimination against the suspect class. And there is no impeachment of a fundamental right. As the court noted, I believe all 68 students that are plaintiffs attended St. Jonatita. This case is sort of akin to Cadmus v. Dickinson Public Schools, where the plaintiff was alleging that the user bus fee interfered with her minimum education. The court said, well, if you attended that school, then how is it interfering with your education? And I think that's sort of similar to this case here. That it's pretty clear that it's not interfering with their right to choose their education. They can still attend private schools. There is no fundamental right to busing, so there's no angle there. So I do believe that the appropriate standard of review is the rational basis standard. And that is a deferential standard. The court, U.S. Supreme Court in FCC v. Beach Communications, stated, you know, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. And that the standard of review is a paradigm of judicial restraint. So basically, as long as it's not arbitrary, capricious, it should withstand the rational basis review. And I believe that MPS has legitimate reasons for extending this busing benefit to students that have to attend these schools. Does MPS bus any SJA students? I know there are 68 alleged in the complaint. Is that the universe, or are there any who they actually do bus? Not in this year at issue. There's a separate part of the policy that deals with an area of unusual hazard. And I believe in prior years that may have come into play, and that was a small, maybe a small handful of students. But no, none of those students received busing from MPS. And I think it's important to look at the policy as a whole to see how MPS is really trying to uniformly apply this. So for the elementary grades, students receive busing if they live two or more miles from the school. That's public and private, so MPS buses public and private elementary school students. And that's because of safety concerns. The high school grades, MPS tried to mirror the statute. I think it's disingenuous to say that the state requires it. There is a city option. MPS does not need to bus any students, public or private. They're exempt because of the public bus service. And the Wisconsin courts have said that that's reasonable because there's a public bus available to them. There is the reasonable uniformity requirement that if MPS chooses to bus some or all of its students, then it has to do with reasonable uniformity. As this court acknowledged in St. John Vianney, Wisconsin's appellate court said that that is ambiguous. And then they went ahead and tried to fashion their reasoning behind it, which was that the school district should not condition the availability on the distance the child lived from school. And I don't believe that MPS does that here. MPS is extending a benefit to certain groups based upon their inability to get the education at their designated attendance area school. And the attendance area school concept in Wisconsin has a rich history, and I think it's very important, and I think St. John Antietam is diminishing that position, that the student has a right to go to their designated attendance area school. So if they can't get that education there for whatever reason, and for a lot of specialty programs, we just cannot offer them in every school district, then MPS decided, well, let's extend this busing benefit because they can't get it at their school, they're going to another school. Well, that's a justification for extending this benefit to students at citywide specialty schools. Correct. It's not a legitimate justification for discriminating against students, similarly situated students at private or parochial citywide schools, because the statute mandates that if you provide it for one class, you have to provide it for the other. Correct. Your own public students, you have to provide it for your private students, too. Correct, and MPS's position is we do provide the same benefit for public and private. St. John Antietam is an attendance area school. We apply the same rule that we apply to our attendance area schools, so no, they generally do not receive... That's a false classification. St. John's is not differently situated than your citywide schools. It's a citywide school. It's a citywide school in the area that it serves, that is correct. Which is the whole city. Which is the whole city, but MPS is... So there's no functional or practical difference. It is similarly situated to your citywide specialty schools, so there's no difference between its students and the students who go to those citywide specialty schools for purposes of an equal protection claim. MPS believes the difference is that the MPS citywide schools are not the designated schools for any students. They are available to the entire city, but you have to meet the select criteria, so all students within the city have a designated school, and the citywide schools, we deem them as... Why should that make any difference for equal protection analysis? I think in this case it's a matter of are you treating the groups differently, and I think the group to compare them to is the attendance area school. That's a false comparison because it's not a limited attendance area school. It's a citywide school. St. John's. Well, it is in a sense that they have set their attendance area to be the entire city, you are correct. Right, so they are properly compared to the citywide specialty schools, which is what the claim is here, and their students, St. John's students, are subject to this rule about one mile from a public bus stop, and their comparable students at the citywide specialty schools are not subject to that rule, and that violates the state statute that mandates that if you pay for this benefit for your own students, you have to pay for the benefit for private school students. Right. MPS believes that there are obviously different ways to look at it. If you just look at it from a strictly what area does it serve, I see where you're saying that they're similar, but MPS believes that there is a distinction between the schools themselves, between being an attendance area school and being... You haven't been able to explain that distinction in any material way for purposes of equal protection analysis. Right, Your Honor. I mean, I believe that as a general rule in Wisconsin, all schools are attendance area schools, and that these specialty schools are unique to meet the needs of the district, and so MPS is extending this busing benefit. And that's a fully rational and eminently sensible justification for offering this benefit, but that doesn't justify violating state law in refusing to apply the same benefit to or supply the same benefit to private school students within the same attendance area, which is citywide. Right. I don't believe that it violates the state law. The state law requires you to provide this benefit to private school students if you elect to provide it to your public school students. With reasonable uniformity, so there's a question of... There isn't any uniformity here. They don't get it. St. Joan students do not get this benefit. They get the same benefit as MPS attendance area schools. But that's the wrong comparison. Maybe you don't agree with me. Obviously, the city doesn't agree with me. This is what your whole case rests on. But assume that that's the wrong comparison, that citywide to citywide is the right comparison. Is this reasonable uniformity? If you're just looking at it through the lens of the areas that they serve, then there would be no distinction. Then there is a violation of the state law. If that's the only perspective to look at it, yes. And so your cost justification is no justification at all, or at least it's not a legitimate justification, because it contravenes express state public policy. If you're looking at it only through that particular lens, and obviously MPS believes that's not the appropriate lens to look at it, but that would be correct. If you're only looking at it in the sense of what areas they serve, it would be hard to find a distinction between that. But I believe that that would diminish the importance of the attendance area schools and the students' right to attend their designated attendance area. And it ignores the various real needs of MPS to address these educational problems, which it has to do by these special schools that can't do it within their particular attendance area schools. And I think the rational basis standard recognizes that governments have these real problems, and so sometimes they may not seem like an appropriate fit, but that's if it's legitimate for the government to do so. And in this case, MPS believes it's legitimate for us to meet the educational mandate to offer these special programs, because absent that, many students would not receive that benefit. If we don't provide the busing benefit to these statewide schools, they're left with what's at their attendance area schools, and MPS simply doesn't have resources or qualified teachers to offer these in all attendance area schools. And I think the rational basis review justifies this. In Heller v. Dole, the U.S. Supreme Court stated, the classification does not fail rational basis review because it is not made with mathematical nicety or because in practice it results in some inequality, and that courts are compelled on a rational basis review to accept the legislature's generalizations, even when there's an imperfect fit between means and ends. So I do think MPS has legitimate interest in meeting this educational mandate, and I don't think it's irrational for them to say, well, because we need to provide this education and the only way we can do this is at these select schools, we're going to just extend this benefit to certain classes of students. I don't think that's impermissible on a rational basis standard. We did get a little bit into cost as a rational basis, and there is case law in this circuit that says significant expense is a rational basis to justify the disparate treatment. Counsel, would cost justify disparate treatment if the city said, listen, it will be cheaper if we only bust redhead students because there are fewer redhead students in the state than brunettes? No. And it would cost? It would not, Your Honor. I believe the appropriate measuring stick is, is it irrational? Is it irrational and arbitrary? That is the distinction, and I don't think that it's irrational for MPS to say, well, we're going to extend this benefit to these certain schools based upon the needs, and that cost coupled with that is a rational basis. It's not just cost, right? Cost alone, if cost alone were rational, then in my hypothetical, the fact that the city would be saving money would be enough. Cost alone probably would not because there are, if it's done arbitrarily, it's not a rational basis. So you are correct that if that's the way it's being done, it wouldn't pass rational basis. But I don't think MPS is acting in an arbitrary manner in making these decisions, and I do think that cost is a component in that case to say, well, why isn't it being extended to this group, which through maybe one perspective, some may think is similarly situated. Of course, MPS disagrees. And I think cost is a rational basis. And we pointed out that while MPS does receive some transportation aid, they receive roughly 5.6% of aid to cover their transportation costs. So it would be a significant expense for MPS to extend this benefit to even more schools. And so I do think it's appropriate for MPS to draw these lines with cost as being a factor and provide a rational basis for this statutory scheme or policy. Thank you. St. Jonatita is challenging a roster notification deadline. I'm not sure if it was addressed in their principal argument. MPS also believes that there is a rational basis for that, and that is the administrative burden. MPS would not otherwise know which students are attending these private schools if it doesn't receive notification, the list of who's attending. Do you know what students will be attending the public schools? They would by virtue of their enrollment in MPS, and they would be in MPS's system. And they would be in MPS's system by July 1st? I'm just wondering what the lag is because I assume that even the public school rosters take some time to assemble, right? Right. The majority of students would be by July 1st, but obviously ultimately depends on when the student enrolls. There may be some people that enroll after, but enrollment starts a lot earlier than that. So it would be in by July 1st, and then the private schools send their list to MPS by July 1st, and then MPS then has to make comparisons. There are sometimes cross-students. Some students say they're enrolled at MPS, and then they'll enroll at a private school. Why July 1st as opposed to August 1st or some other day? Was that randomly selected, or is there some reason behind that? The statute, I believe, calls for March 15th, and I think MPS felt like that was too soon, and so MPS moved it back. And I believe their thought was it gives time before the start of the actual school year, which is typically September 1st, although now MPS has an early start calendar, so it's mid-August to process those and get it prepared. So I don't think it's arbitrary. I do think they used meaningful determination to say, okay, we need time to make this before the school year starts. And I think it's appropriate. Like I said, I'm not sure that St. John and Tita addressed it in their opening argument, but these are administrative undertakings that have to be done, and MPS would not have access to this information without SGA presenting it to them, and then they have to make determinations and make available transportation, which they can do in a number of ways. They can provide Yellow Bus themselves. They can contract it with a private school and pay the private school for services, or they can contract directly with parents. Right. Well, I think the argument is not so much to the obligation to provide a list. It's that the deadline forecloses any late enrollees from obtaining busing when late enrollees into the public schools can get the busing benefit. Right. MPS is operating under the statutory framework that allows for the busing benefit that St. John and Tita's. But the statutory deadline is sometime in September, right? No, the statutory deadline, I believe, is March 15th. That applies when the school district is required to bus. So there is a legitimate argument that it does not apply to MPS, but MPS would ordinarily apply that standard. It's March 15th is when private schools have to submit it to the school district. MPS has moved it back. I mean, that's way too early, if we're being honest. Counsel, is that accurate, that if a student enrolls in St. John and Tita after July 1st, that student is not allowed to get busing even if she would otherwise qualify, whereas a late enrollee in public school does qualify for busing? I believe that is correct if the student is not on the list that is provided to MPS. So even if the list has to be provided, there's no opportunity for amendment? I believe that is correct, and that's how it's laid out under state law. Well, the September deadline, then, is the promulgated deadline that MPS uses, but as a practical matter, July 1st is the operative date. That's correct, and it's unclear how that discrepancy came about. All of the students, and I believe there are six students at St. John and Tita, added to their list, it was also after that September date, so they didn't even meet the date under the policy. Do you entertain? Does the record have any evidence that the district entertains latecomers up to the promulgated deadline of September 10th, 15th? No, Your Honor, there's no evidence in the record. As I stated, since the six students did not even meet that September deadline, it didn't apply to those students, so there's nothing in the record, to my knowledge, that addresses that point. Okay. You're well into your rebuttal time. Do you want to wrap up? Your Honor, MPS believes the differential rational basis standard applies to this case and that MPS has legitimate interests, as stated. These are real problems that governments face, and MPS is trying to meet its obligations to its students, trying to remove barriers so that they can access the best education possible. And so it has to make these decisions. It has to draw these lines and make these determinations, keeping in mind the funds that are available. And the case law, I think, supports that that is a rational, that is a legitimate interest for a school district, for government, and it fulfills a rational basis standard, and that the state statute, which does not actually require MPS to bust any students, and the reason you informed me is ambiguous and I would submit as a state law claim and not an equal protection claim. All right. Thank you, counsel. We have your argument. Mr. Lococo. So I'll quickly talk about the administrative deadline. First of all, MPS's administrative policy penalizes the wrong person. It would be the schools who submit the roster late, and yet it's the parents and their children who don't receive the busing benefit. Although it's not on all fours, Plyler is a good example, where the Supreme Court held that the children of illegal immigrants shouldn't be penalized by being withheld education benefits just because their parents may have committed a crime. Additionally, the policy, certainly administrative concerns can be a rational purpose, but MPS's policy does not address those concerns in a rational manner. You can imagine two students enrolling on August 31st, one public and one private. MPS would have information about neither student. Both would be late. The administrative task would be the same, determining where the child's enrolled, whether the child's eligible for transportation, and then setting up that transportation. Yet MPS provides busing to the public school student and denies busing to the private school student. The statute that talks about a deadline doesn't apply here because that only applies to schools that are required to transport. It doesn't apply under the city option. And noticeably, the statute does not say that if the deadline is missed, then the students are denied transportation. That was a creation of MPS's own. I know we've discussed attendance area versus citywide distinction. I'd just like to direct the court to the record, docket 21 and 29. MPS's corporate designee admitted that there's no practical distinction between schools like SGA and their own citywide schools. This entire litigation process, we've searched for a difference between the two, and there isn't one. And there's certainly nothing in the statutes that suggests that the distinction matters for purposes of Wisconsin's generally available transportation policy. With respect to capacity, the idea that MPS's policy is justifiable on that ground, there's a 20% availability in seats in Milwaukee Public School District. There were several schools that we cite to in our brief that transported students despite the fact that there were open seats at their neighborhood school. This isn't the case where MPS is transporting students because there is a lack of capacity. And even at those schools where there might have been a problem, they should have been equally willing to transport St. Joan Antietam students because they live in the same neighborhood area and they could attend those neighborhood schools. For all these reasons, St. Joan Antietam would request that the court reverse the decision of the district court, grant summary judgment in St. Joan Antietam's favor, and remand the case for further proceedings. Thank you. All right, thank you. Our thanks to all counsel. The case is taken under advisement.